IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES JENSEN | § | |
| | § | |
| VS. | § | CIVIL ACTION NO._____ |
| | § | JURY TRIAL |
| RUSH TRUCK CENTERS | § | |
| OF TEXAS, LP | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**NOW COMES** James Jensen (hereinafter "Plaintiff"), filing this his *Plaintiff's Original Complaint*, complaining of Rush Truck Centers of Texas, LP, (hereinafter "Defendant"). In support of same, Plaintiff would show unto this Honorable Court as follows:

## I
## PARTIES

1. Plaintiff is a male citizen of the United States and a Texas resident, residing in Lorena, McLennan County, Texas.

2. Defendant is a domestic limited partnership authorized to do business in the State of Texas, and can be served by way of process via its registered agent, to wit: Corporation Service Company *d/b/a* CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3. Defendant, at all relevant times hereto, was an employer as defined by and within the meaning of the Americans With Disabilities Act of 1990 (hereinafter "ADA"), codified at 42 U.S.C. §12101, and is engaged in interstate commerce while employing more than fifteen (15) persons.

## II
## JURISDICTION AND VENUE

4. Plaintiff brings this action for compensation and other relief for violations under the ADA, thereby invoking the federal question jurisdiction conferred upon this Court by 28 U.S.C. **§**1331.

5. Plaintiff timely filed a Notice of Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), charge number 36B-2016-00071.

6. On January 11, 2018, Plaintiff received a *Notice of Right to Sue* from the EEOC.

7. Plaintiff has therefore complied with all conditions precedent and exhausted all administrative remedies prior to filing suit. Plaintiff now timely files this, his *Plaintiff's Original Complaint*, within ninety (90) days of receiving his *Notice of Right to Sue*.

8. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 (b) and (c) because Defendant is a resident said judicial district.

## III
## FACTS

9. On or about May 28, 2015, Plaintiff was hired as a Diesel Mechanic by Rush Truck Centers of Texas, LP (hereinafter "Rush") and his immediate supervisor was Jeff Johnson when Plaintiff was fired.

10. On or about October 13, 2015, Plaintiff met Jeff Johnson for the first time. On that day, they were in a meeting discussing plans for Rush's upcoming 50th anniversary party when Johnson said he wanted to host an inflatable boxing and/or jousting event, which all employees would be required to participate in.

11. Plaintiff immediately spoke-up and told Johnson he suffers from a disability and could not participate as a blow to the head could seriously harm hom and aggravate his disability. In response, Johnson just kept pushing the issue by demanding that all employees must participate in

the boxing/jousting activities or they would be fired. Feeling more and more uneasy and concerned, Plaintiff replied to Johnson by telling him that he felt extremely uncomfortable talking about his disability because it required no accommodation at work but Plaintiff *did* inform Johnson that a blow to his head could cause blindness.

12. Plaintiff went on to assure Johnson that he could perform all aspects of his job, but that boxing and/or jousting wasn't part of his job description or duties as a Diesel Mechanic.

13. After the meeting, Johnson cornered Plaintiff and demanded Plaintiff tell Johnson exactly what his disability was. Because Johnson had just threatened to fire Plaintiff, he felt as though he had no choice but to tell Johnson about his disability.

14. Plaintiff proceeded to explain that he has been diagnosed with Pseudoxanthoma Elasticum (PXE) which is a rare genetic disorder characterized by progressive calcification and fragmentation of elastic fibers primarily affecting the skin, the retina, and the cardiovascular system. Plaintiff explained that according to his doctors, his disease can result in blindness so he was warned not to ever take place in any contact sport.

15. Johnson responded to Plaintiff by telling Plaintiff he was restricted against getting a head injury at work and therefore could no longer work for Rush.

16. Nick Henderson was a witness to that conversation and Henderson told Jeff that he had back issues and didn't want to participate either.

17. After Johnson's confrontation, on the same day, Plaintiff immediately called Rush's human resources department to explain what had just happened to him and to complain that he felt he was being discriminated against because of his disability – a disability requiring no accommodation. The person Plaintiff spoke to told him they would "take care of it."

18. Prior to disclosing his disability to Jeff Johnson, Rush was not aware Plaintiff had a

disability, as he never required any type of accommodation. Plaintiff has never been medically restricted from any type of activities which were a part of his essential job functions.

19. On or about October 15, 2015, Johnson began to retaliate against Plaintiff. First Johnson complained to Nick Henderson that he believed Plaintiff was being paid more than he should be (Plaintiff worked in a "flat rate" pay scale) and told Plaintiff that he would no longer be getting paid for training or any shop time (cleaning up, taking out the trash, etc.), in violation of FLSA.

20. Johnson also stopped providing Plaintiff with his efficiency reports. The purpose of the Diesel Mechanics' reports is to show them how long they spend on each job and how much they are getting paid for each job, compared to what Rush quoted the customer. The flat rate flagging gives the mechanics the opportunity to maximize their pay as they reap the rewards of their expertise and improve their efficiency rates. The reports are important for the mechanics because the reports allow them to track their efficiency.

21. Next, Plaintiff was shorted on his paycheck by 10 hours. When that happened, Plaintiff got a copy of his pay report to confirm that his check was short from the missing hours and asked Johnson why he was shorted 10 hours. Johnson admitted to Plaintiff that he had deleted time off of Plaintiff's report, but promised to pay Plaintiff supplemental pay to make up for the time.

22. On or about sometime in November, 2015, Plaintiff received his first and only write-up, in which Johnson wrote Plaintiff up for not knowing how to use a machine that Plaintiff had never been taught or trained to use.

23. On or about December 1, 2015, Plaintiff was handed his last job to do at the end of the work-day for a truck with a broken universal joint, or "u-joint." Plaintiff examined the one broken u-joint and determined it failed because it was never greased or properly maintained. In fact, upon a closer examination, Plaintiff discovered that none of the u-joints in that paricular truck were

greased and all of the u-joints showed extensive ware and movement when pushed by his hand – when they absolutely should not. If there is movement in a u-joint, that means the u-joint is bad.

24. When Plainitff discovered all of the u-joints were bad and needed replacement he asked lead mechanic, Andy Abrams, for assistance. Because the u-joint on the truck was so badly broken Plaintiff had difficulty removing it so Abrams helped by torching it out. Once the pair removed the broken u-joint, Plaintiff installed a brand new u-joint and strap kit. Plaintiff also wrote in the paperwork he submitted that all of the u-joints on the truck were worn badly and needed to be replaced. Plaintiff even followed-up that day by speaking with the service writer, Terry Martinez, and told her that he had never seen a u-joint in as bad of condition as the one he had replaced and asked her to please explain to the customer that all of the u-joints were bad and needed replacement. Despite his concerns, Plaintiff was informed by Martinez to just grease the other u-joints and get the truck out. Plaintiff replied to Martinez that the driver of that truck would be right back with another broken u-joint problem, but did what he was told nonetheless.

25. On or about December 3, 2015, Plaintiff was called into the General Manager's office along with Johnson. Together, they explained to Plaintiff that the truck he worked on only went nine (9) miles and that the driveline Plaintiff installed falied because Plaintiff installed the u-joint improperly. After giving this much thought, Plaintiff realized that this was impossible, as u-joints are designed to **only** fit when installed correctly. If a mechanic attempts to install a u-joint incorrectly, the bolts will not go in. Plaintiff contends that a different u-joint failed as he had predicted. Plaintiff was terminated me for making a mistake that he did not make.

## IV
## COUNT I:

**VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990**

26. By and through his *Plaintiff's Original Complaint*, Plaintiff pleads that Defendant

maintains a pattern and practice of discriminating against disabled Americans, such as Plaintiff, in its employment practices. More specifically, Defendant, through its acts and omissions, unjustifiably terminated Plaintiff because he suffers from a disability, thereby resulting in the disparate treatment of Plaintiff.

27. By and through his *Plaintiff's Original Complaint*, Plaintiff pleads that he suffers from a physical impairment that substantially limits one or more major life activities.

28. By and through his *Plaintiff's Original Complaint*, Plaintiff pleads that he was hired by Defendant and, *ipso facto*, was qualified for the position of Diesel Mechanic based upon the requisite skill, experience, education and other job-related requirements for the position, as shown by the actions of Defendant.

29. By and through his *Plaintiff's Original Complaint*, Plaintiff pleads that he can perform the essential functions of his job.

30. By and through his *Plaintiff's Original Complaint*, Plaintiff pleads that his disability was the sole and/or another improper reason for Defendant's decision to terminate his employment, resulting in its disparate treatment of Plaintiff.

31. Further, and in the alternative, Plaintiff pleads that he suffers from a physical impairment that is substantially limiting only because of the attitudes of others, including Defendant, toward the impairment.

32. Further, and in the alternative, Plaintiff pleads that he may not suffer from an impairment that limits a major life activity at all, but is "regarded as" suffering from a substantially limiting impairment, as that term of art is defined by the ADA.

33. Further, and in the alternative, Plaintiff pleads that Defendant utilized qualification standards, employment tests or other selection criteria, that serve to screen out or tend to screen

out an individual with a disability or a class of individuals with disabilities and that said standards, tests, and other selection criteria are inconsistent with business necessity. The aforementioned discriminatory labor and employment law practices result in a disparate impact upon Plaintiff and similarly situated individuals, *in genere*.

## VI.
## DAMAGES

34. Plaintiff pleads that Defendant, and its agents, employees and representatives, have caused Plaintiff grievous harm and damages. As a direct and proximate result of their violations of state and federal law, Defendant has caused Plaintiff to suffer lost past and future wages. Plaintiff is entitled to pecuniary damages for lost past and future wages to be determined at inquest.

35. Plaintiff pleads that Defendant has caused him to suffer acute mental anguish including, but not limited to, extreme emotional distress and mental pain, intense feelings of depression, low self-esteem, humiliation, belittlement, shame, nausea, loss of sleep and appetite. Plaintiff will, in all likelihood and for the balance of his life, continue to suffer mental anguish. As such, Plaintiff is entitled to compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

36. Plaintiff pleads that Defendant violated Plaintiff's civil rights with malice or reckless indifference to his federally protected rights. As such, Plaintiff is entitled to punitive damages in an amount to be determined at inquest and at the maximum rate permitted by law.

37. Plaintiff was forced to secure the undersigned counsel to protect his civil rights and, therefore, requests an award of attorney's fees.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon final trial on the merits, he recover judgment against Defendant, said judgment entitling Plaintiff to:

    1.    Compensation for all reasonable damages suffered by Plaintiff, including, but not

limited to, past and future wages and other compensation, in an amount to be determined upon inquest;

2. Compensation for compensatory and punitive damages, in an amount to be determined upon inquest;

3. Pre-judgment and post-judgment interest, at the maximum rate permitted by law;

4. All costs of court expended in this lawsuit;

5. Reasonable and necessary attorney's fees;

6. A mandatory injunction reinstating Plaintiff's employment and employment benefits, retroactive to fees retroactive to the date of Plaintiff's termination.

7. A mandatory injunction forbidding Defendant from violating rights secured by Title I of the Americans With Disabilities Act of 1990;

8. Such other and further legal relief, either at law or equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**GALE LAW GROUP, PLLC**
711 N. Carancahua St., Suite 514
Corpus Christi, Texas 78401
Mailing Address:
P.O. Box 2591
Corpus Christi, Texas 78403
Phone Number: 361-808-4444
Fax Number: 361-232-4139

By: */s/ Amie Augenstein*
Amie Augenstein
Amie@GaleLawGroup.com
*Attorney-in-Charge for Plaintiff*
Texas Bar No. 24085184
Southern District Bar No. 2236723

*/s/ Christopher J. Gale*
Christopher J. Gale
Chris@GaleLawGroup.com
*Attorney for Plaintiff*
Texas Bar No. 00793766

Southern District Bar No. 27257

**<u>Demand for Jury Trial</u>**

Plaintiff hereby demands trial by jury pursuant to Fed. R. Civ. P. 38(b).